IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANIELLE SCHULZ,<br><br>          Plaintiff,<br><br>  vs.<br><br>MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY, WESTERN FARM BUREAU SERVICE COMPANY, INC., FARM BUREAU LIFE INSURANCE COMPANY, a subsidiary of FBL FINANCIAL GROUP, INC., ABC Corporations 1-5, and JOHN DOES 1-5,<br><br>          Defendants. | CV 20–88–M–DLC<br><br><br><br>ORDER |

      Defendants Mountain West Farm Bureau Mutual Company ("Mountain West") and Western Farm Bureau Service Company ("Western Farm Bureau") move to dismiss Counts III, VI, and VII of the Complaint. (Doc. 2.) Defendant Farm Bureau Life Insurance Company ("Farm Bureau Life") joins the motion. (Doc. 11.) Defendants argue that no cognizable cause of action exists as to Count III, in which Plaintiff Danielle Schulz alleges that Mountain West and Western Farm Bureau violated Montana's independent contractor rules. They go on to contend that Schulz fails to state claims for actual and constructive fraud in Counts VI and VII, respectively.

      For the following reasons, the Court agrees and grants the motion.

## BACKGROUND[1]

About fourteen years ago, Schulz and Mountain West entered into an agency contract, whereby she agreed to sell insurance products on Mountain West's behalf, and Mountain West paid Schulz commission on her sales in consideration ("Mountain West Contract"). (Doc. 1-1 at 7.) At the same time, Schulz entered into a similar agreement with Farm Bureau Life ("Farm Bureau Life Contract"). (*Id.*) Under the terms of both contracts, Schulz acted as an independent contractor. (*Id.*) Apparently, Schulz also entered into a contract with Western Farm Bureau, although she fails to specify the nature of that relationship. (*See id.* at 9, ¶ 37.)

Despite the language contained in the Mountain West Contract stating that the company "has neither the desire nor the right to exercise control over the manner by which the Agent conducts [her] activities," Schulz alleges that, in 2018, Mountain West began "harassing" her about various aspects of her insurance sales practice. (*Id.* at 9.) Eventually, the company terminated the Mountain West Contract in September 2019 based on its "dissatisfaction in how she was handling her accounts." (*Id.* at 8–9.) On or about the same day, Farm Bureau Life

---

[1] The Court derives the background facts from the Complaint. (Doc. 5.) At this stage, the Court "take[s] all allegations of material fact as true and construe[s] them in the light most favorable to the nonmoving party." *Steinle v. City and Cty. of S.F.*, 919 F.3d 1154, 1160 (9th Cir. 2019) (citation omitted).

terminated the Farm Bureau Life Contract. (*Id.* at 10.) Western Farm Bureau, too, terminated its contract with Schulz on or about September 12, 2019. (*Id.* at 9–10.)

Schulz sued Defendants in Missoula County District Court on April 24, 2020, alleging seven claims for relief under Montana law. (*Id.* at 3.) In Count I, Schulz claims that Defendants Mountain West and Farm Bureau Life breached their contractual obligations by terminating their respective agency agreements based on her purported mishandling of insurance clients and products. (*Id.* at 8–9.) She contends in Count II that Defendants breached the covenant of good faith and fair dealing. (*Id.* at 10.) In Count III, Schulz asserts that Defendants misclassified her as an independent contractor, when they should have characterized her as an employee "in relations to her daily work." (*Id.* at 11.) She goes on to allege in Count IV that Defendants violated Montana's wrongful discharge statute. (*Id.* at 12–13.) Similarly, in Count V, Schulz contends that the termination of the agency contracts amounted to "wrongful discharge in violation of public policy." (*Id.* at 13–14.) Finally, in Counts VI and VII, Schulz asserts that Defendants engaged in constructive and actual fraud, respectively. (*Id.* at 15–16.)

Based on diversity of citizenship and amount in controversy, 28 U.S.C. § 1332(a), Defendants Mountain West and Western Farm Bureau removed Schulz's complaint to federal court on June 18, 2020. (Doc. 1.) Farm Bureau Life consented to removal. (*Id.* at 3.) Defendants then moved pursuant to Federal Rule

of Civil Procedure 12(b)(6) to dismiss Counts III, VI, and VII. (Docs. 2; 11.) Specifically, Defendants argue that no private cause of action exists to support Count III, and that Schulz failed to adequately plead Counts VI and VII. (Doc. 4 at 15.) Schulz responded to the motion on July 3, 2020 (Doc. 13) and Defendants replied on July 10, 2020 (Doc. 15).

## LEGAL STANDARDS

### I. Pleading

#### A. General Rules: Federal Rules of Civil Procedure 8(a) and 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 8(a), a plaintiff must plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To that end, and to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must provide "a short and plain statement of the claim showing the pleader is entitled to relief," which "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555, and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## B.     Fraud Standard: Federal of Civil Procedure Rule 9(b)

When an allegation involves fraud, a heightened pleading standard applies. Fed. R. Civ. P. 9(b).  That is, the plaintiff must "state with *particularity* the circumstances constituting fraud or mistake." *Id.* (emphasis added).  Still, facts related to "conditions of mind" like "[m]alice, intent, [and] knowledge . . . may be alleged generally." *Id.*  To meet Rule 9(b)'s particularity requirement, a claim must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salemeh v. Tasadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). A motion to dismiss a claim grounded in fraud for failure to plead with particularity is the functional equivalent of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1197, 1107 (9th Cir. 2003) (explaining that a district court may dismiss a claim for failing to satisfy Rule 9(b), even though the federal rules contain no explicit basis for such a dismissal).

Pointing to *Tire Depot, Inc. v. Northland Insurance Companies*, Schulz contends that Federal Rule 9(b)'s heightened standard should not apply to her constructive fraud claim.  (Doc. 13 at 11 (citing No. CV 07-113-M-JCL, 2008 WL 11348016 (D. Mont. Mar 12, 2008)).)  In *Tire Depot, Inc.*, United States Magistrate Judge Jeremiah Lynch examined a Montana Supreme Court case where

- 5 -

the Court stated that "[c]onstructive fraud, unlike actual fraud, is not required to be pled with specificity mandated under Rule 9(b), M.R.Civ.P." 2008 WL 11348016, at *2 (quoting *Eaton v. Morse*, 687 P.2d 1004, 1009 (Mont. 1984)). Judge Lynch concluded that, because Montana construes "a claim of constructive fraud [as] distinct from a claim of common law or actual fraud[,] . . . the particularity requirement of [Federal Rule 9(b)] does not apply to a claim of constructive fraud." *Id.* For the following reasons, this Court respectfully disagrees.

In federal court, "[t]he Federal Rules of Civil Procedure apply irrespective of . . . whether the substantive law at issue is state or federal." *Vess*, 317 F.3d at 1103 (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)). Consequently, "[i]t is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Id.* Whether Montana courts apply Federal Rule 9(b)'s state analogue to constructive fraud causes of action is irrelevant. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (rejecting the argument that, because California courts do not apply Rule 9(b) to state consumer protection statutes, federal courts should not apply it either); *see also Mont. Merch., Inc. v. Dave's Killer Bread, Inc.*, CV 17-62-GF-BMM, 2017 WL 2536363, at *3 (D. Mont. June 9, 2017) (applying Federal Rule 9(b)'s particularity requirement to a constructive fraud claim).

Constructive fraud under Montana law consists of "any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault." Mont. Code Ann. § 28–2–406(1). This conduct includes "misleading another person to that person's prejudice." *Id.* To support her constructive fraud allegation, Schulz avers that Defendants "created false impressions and failed to disclose material facts" about their respective contractual relationships; in other words, Schulz says that Defendants misled her, causing her prejudice. (Doc. 1-1 at 15.) The Court fails to see any daylight between the fraud § 28–2–406(1) prevents—and the conduct Schulz alleges—and other state-law causes of action to which the Ninth Circuit has conclusively applied Rule 9(b)'s heightened pleading standard. *See, e.g., Kearns*, 567 F.3d at 1125 (stating that Rule 9(b) applies to state-law causes of action designed to prevent unfair or deceptive business practices and misleading or untrue advertising).

Furthermore, constructive fraud is "fraud" under Montana law. Mont. Code Ann. § 28–2–404. While Montana certainly distinguishes between constructive and actual fraud, *compare* Mont. Code Ann. § 28–2–406 *with* Mont. Code Ann. § 28–2–405, the Court finds no support for the proposition that the distinction puts allegations of one type of fraud outside Rule 9(b)'s reach, but leaves claims of the other well within its grasp. Indeed, Judge Lynch went on to apply Federal Rule 9(b) to a constructive fraud claim without reference to *Tire Depot, Inc. See*

*Bertelsen v. Citimortgage, Inc.*, No. CV 16-2-BU-JCL, 2016 WL 3282189, at *11 (D. Mont. June 14, 2016).

Thus, in this diversity case, the Court will "examine state law to determine whether the elements of [constructive] fraud have been pled sufficiently to state a cause of action[.]" *Vess*, 317 F.3d at 1103 (citation omitted). However, pursuant to Federal Rule 9(b), "the *circumstances* of the fraud must be stated with particularity." *Id.* (emphasis in original).

## II. Leave to Amend

Where a motion to dismiss is granted, a district court must decide whether to grant the nonmovant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting the nonmovant to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile").

**DISCUSSION**

## I. Count III: Violation of Independent Contractor Rules

Schulz alleges that Defendants violated the Montana Department of Labor's Rules by classifying her as an independent contractor but treating her as an employee. (Doc. 1-1 at 11.) Specifically, she asserts that Defendants violated Montana Code Annotated §§ 39–1–104 and 39–2–303.[2] (*Id.*) Defendants argue that neither statute provides a private cause of action for the purported misclassification of an employee. (Doc. 4 at 6.) The Court agrees.

First, § 39–1–104 simply sets out the cooperative relationship between the Montana Department of Labor and Industry ("MDLI") and the federal government. The statute authorizes the MDLI to "assist and cooperate with the . . . U.S. department of labor[] in the enforcement within this state of the Fair Labor Standards Act of 1938." Mont. Code Ann. § 39–1–104. It also provides for reimbursement from the federal agency for the MDLI's cooperation and assistance. *Id.* In other words, and as Defendants argue, nothing in § 39–1–104 proscribes—

---

[2] Although Schulz cites Montana Code Annotated §§ 39–1–104 and 39–2–303 as the legal grounds for Count III, her Complaint also recites factors—without citation—that the Montana Department of Labor uses to determine whether it should issue an Independent Contractor Exemption Certificate. *See* Mont. Admin. R. 24.35.101(7), 24.35.302. However, and as Defendants point out, nothing in regulations that guide the Montana Department of Labor's decision-making provides a private cause of action against an employer. *See id.* at 24.35.202 (stating that the *agency* applies the "two-part test" Schulz sets out in her Complaint (Doc. 1-1 at 11) "to determine whether an individual is an independent contractor or an employee"). Schulz abandons her argument at it relates to the Montana Department of Labor's two-part test in her response brief (*see* Doc. 13 at 6–9), and the Court will not make an argument for her.

or relates to—the conduct Schulz alleges in Count III.  In her response to Defendants' motion to dismiss, Schulz ignores the issue entirely.  Therefore, Defendants' argument as it relates to the inapplicability of § 39–1–104 to Count III is deemed well-taken.  *See* D. Mont. L. R. 7.1(d)(1)(B)(ii).

The Court turns, then, to the second statute on which Schulz bases her misclassification claim.  Pursuant to Montana Code Annotated § 39–2–303, employers "may not induce, influence, persuade, or engage workers to change from one place to another in this state through or by means of deception, misrepresentation, or false advertising concerning the kind or character of work[.]"  Mont. Code Ann. § 39–2–303(1).  The statute goes on to provide a private right of recovery for damages "sustained in consequence of the deception, misrepresentation, or false advertising used to induce [a] worker to change the worker's place of employment[.]"  *Id.* at § 33–2–303(2).  In other words, the statute "prevents Montana businesses from inducing workers to change location for work based on false promises."  *Bentley v. ConocoPhillips Pipeline Co.*, No. CV 09-01-M-DWM, 2010 WL 1981324, at *5 (D. Mont. May 14, 2010).

Schulz asks the Court to engage in a reading of § 39–2–303 that is illogical at best and unintelligible at worst.  By randomly placing emphasis on the word "or," Schulz argues that the statute sweeps conduct beyond wrongful inducement within its scope.  (Doc. 13 at 6.)  However, even if the Court could make sense of

her logic on this point, it declines to further interpret statutory language where it is clear and unambiguous, as it is here. *Bentley*, 2010 WL 1981324, at *5 (citing *Mont. Sports Shooting Ass'n v. State*, 185 P.3d 1003, 1006 (Mont. 2008)). And contrary to Schulz's insistence otherwise, none of the cases she cites stand for the proposition that § 39–2–303 remedies anything beyond the damages sustained when a worker is wrongfully induced to "change [her] place of employment[]" through deception, misrepresentation, or false advertising. Mont. Code. Ann. § 39–2–303(2).

Nothing in the Complaint alleges that Defendants made false promises that led Schulz to change her location or place of employment. Indeed, Schulz makes no allegation that she held *any* employment prior to entering into agency contracts with Defendants, nor does she allege that her contractual relationships with Defendants forced her to change her location within Montana. That Defendants purportedly breached their contractual obligations is not enough. The plain language of the statute requires a showing that Defendants' wrongfully induced Schulz to "change from one place to another in this state"—a fact that Schulz simply does not plead. *See* Mont. Code Ann. § 39–2–303.

Nothing in the Complaint gives Defendants "fair notice" of the "grounds upon which [Count III] rests." *See Twombly*, 550 U.S. at 555. Accordingly, dismissal of Count III pursuant to Rule 12(b)(6) is proper.

## II. Counts VI and VII: Constructive and Actual Fraud

At the outset, the Court is compelled to temporally orient the conduct relevant to Schulz's fraud allegations. Montana's fraud statutes, Mont. Code Ann. §§ 28–2–404, –405, and – 406, are a means to challenge a contract's *existence* by attacking the essential element of consent. *See id.* at § 28–2–102 (stating that, for a valid contract to exist, "it is essential . . . that there be [the parties'] consent"). Consent "is not real" when it is obtained through actual or constructive fraud. *Id.* at §§ 28–2–401(c), 28–2–404. A party whose consent was obtained through fraud may rescind the contract. *Id.* at §§ 28–2–302, 28–2–1711.

In other words, by alleging fraud, a plaintiff is claiming that the defendant defrauded her *at the time of contracting*. Therefore, the conduct relevant to a fraud allegation is that which occurred at the time of contract formation. Bearing the pertinent time period in mind, the Court examines Montana's constructive and actual fraud statutes in turn to determine whether Schulz has sufficiently pled claims for relief. *See Vess*, 317 F.3d at 1103.

### A. Count VI: Constructive Fraud

Schulz avers in Count VI that Defendants committed constructive fraud by "creat[ing] false impressions and fail[ing] to disclose material facts relating to their refusal to uphold their contracts as written." (Doc. 1-1 at 15.) Specifically, Schulz alleges that Defendants defrauded her by treating her like an employee instead of

an independent contractor, despite the contracts' language stating that Defendants "ha[d] neither the desire nor the right to exercise control over he manner by which [Schulz] conduct[ed] [her] activities of selling insurance and servicing policyholders[.]" (*Id.* at 9, 15.)

Montana defines constructive fraud as "any breach of duty that, without actually fraudulent intent, gains an advantage to the person in fault . . . by misleading another person to that person's prejudice." Mont. Code Ann. § 28–2–406. To make out a prima facie constructive fraud claim, plaintiff must establish the following elements:

> a representation; the falsity of that representation; the materiality of that representation; the speaker's knowledge of that representation's falsity or ignorance of its truth; the hearer's ignorance of that representation's falsity; the hearer's reliance upon the truth of that representation; the hearer's right to rely upon that representation; and the hearer's consequent and proximate injury or damage caused by reliance on that representation.

*Dewey v. Stringer*, 325 P.3d 1236, 1240 (Mont. 2014) (citations omitted).

The Montana Supreme Court has explained the primary difference between actual and constructive fraud: "[w]hile actual fraud hinges on the knowledge and intent of the defendant, constructive fraud hinges only on the knowledge of the defendant." *Durbin v. Ross*, 916 P.2d 758, 762 (Mont. 1996). A plaintiff may establish the defendant's knowledge by pointing to a pattern of facially misleading representations that should have been elaborated, "so as not to give [the plaintiff]

the wrong impression." *Moschelle v. Hulse*, 622 P.2d 155, 158 (Mont. 1980). For example, in an effort to sell their bar in Virginia City, the defendants in *Moschelle* told the buyers that, among other selling points: the building was in good condition; they had installed new wiring; and, that the toilet backed up on only one occasion. *Id.* The defendants failed to tell the buyers, however, that: the building required repairs to bring it up to standard; the "new" wiring was installed thirty years before; and, "that the tavern was subject to seasonal flooding from high ground water seepage." *Id.* The defendants went on to assure the buyers that they would enjoy booming Labor Day business. *Id.* at 159. They did not. "[T]rouble arose with motorcycle gangs," forced the buyers to close over the holiday. *Id.* The defendants would testify that they, too, "had been forced to close on Labor Day weekend because of trouble with motorcycle gangs." *Id.*

While the buyers failed to establish fraudulent intent on the part of the *Moschelle* defendants, they demonstrated defendants' knowledge by way of a "pattern of repeated concealments of the true state of affairs." *Id.* That is, the buyers showed that the defendants knew about relevant facts but withheld them, notwithstanding the question of whether the defendants intended to defraud the buyers into making a bad purchase. Had the evidence shown, on the other hand, that the defendants were unaware of the defects at the time of contracting, no duty to disclose would have been imposed, and the buyers would have been unable to

the wrong impression." *Moschelle v. Hulse*, 622 P.2d 155, 158 (Mont. 1980). For example, in an effort to sell their bar in Virginia City, the defendants in *Moschelle* told the buyers that, among other selling points: the building was in good condition; they had installed new wiring; and, that the toilet backed up on only one occasion. *Id.* The defendants failed to tell the buyers, however, that: the building required repairs to bring it up to standard; the "new" wiring was installed thirty years before; and, "that the tavern was subject to seasonal flooding from high ground water seepage." *Id.* The defendants went on to assure the buyers that they would enjoy booming Labor Day business. *Id.* at 159. They did not. "[T]rouble arose with motorcycle gangs," forced the buyers to close over the holiday. *Id.* The defendants would testify that they, too, "had been forced to close on Labor Day weekend because of trouble with motorcycle gangs." *Id.*

While the buyers failed to establish fraudulent intent on the part of the *Moschelle* defendants, they demonstrated defendants' knowledge by way of a "pattern of repeated concealments of the true state of affairs." *Id.* That is, the buyers showed that the defendants knew about relevant facts but withheld them, notwithstanding the question of whether the defendants intended to defraud the buyers into making a bad purchase. Had the evidence shown, on the other hand, that the defendants were unaware of the defects at the time of contracting, no duty to disclose would have been imposed, and the buyers would have been unable to


rescind the sales contract on a constructive fraud theory. *See Houdashelt v. Lutes*, 938 P.2d 665, 672 (Mont. 1997) (stating that constructive fraud requires a breach of duty, and if a party is unaware of a defect at the time of contracting, she is under no duty to disclose it).

Here, no facts indicate that at the time of contracting fourteen years ago, Defendants misled or withheld relevant information from Schulz. She asserts that Defendants "refus[ed] to uphold their contracts as written" by beginning to "harass[]" her two years ago "regarding a perceived control of how she serviced her clientele, policies[,] and insurance products." (Doc. 1-1 at 9, 15.) Schulz goes on to say that Defendants "owed a duty to disclose to [her] all material facts relating to the conditions of her contractual employment including that she would be treated as an employee and not an independent [a]gent." (*Id.* at 15.)

However, that Defendants began improperly treating Schulz as an employee twelve years after the contractual relationship began is inapposite to the question presented by her constructive fraud claim. That is, whether her consent to contract was "not real," because Defendants fraudulently obtained it. Mont. Code Ann. §§ 28–2–401(c), 28–2–404. Nothing in the Complaint indicates as much. Instead, Schulz asserts only that, in 2018, Defendants began exercising excessive control over her, in contravention of the contracts' terms. (*See* Doc. 1-1 at 9.)

Furthermore, Schulz's conclusory argument that "Defendants did not disclose that they were going to be constantly managing [her]" fails to convince the Court that her Complaint sufficiently pleads constructive fraud. (*See* Doc. 13 at 12.) Unlike the circumstances in *Moschelle*, nothing alleged here indicates that Defendants *knew* material facts at the time of contracting and failed to disclose them. Instead, Defendants allegedly began breaching the contracts twelve years after they were formed. Breach is irrelevant to the question of whether the contracts existed in the first place, and Schulz fails to plead any facts beyond post-formation breach.

In sum, the Court finds that Schulz has wholly failed to allege or argue that Defendants' misled or withheld material facts from her at the time of contract formation. Thus, she fails to state a plausible constructive fraud claim, let alone a particularized one as required under Federal Rule 9(b). Count VI is dismissed.

### B. Count VII: Actual Fraud

Schulz alleges that Defendants committed actual fraud, citing Montana Code Annotated §§ 39–2–904 and 28–2–405(4)(5) in the heading to Count VII. (Doc. 1-1 at 16–17.) She also mentions "actual malice" in Count VII's heading, although she cites no authority supporting a cause of action for actual malice. (*Id.* at 16.) Moreover, nothing in the Complaint nor Schulz's response brief illuminates how § 39–2–904—the statute governing the elements of wrongful discharge—applies to

charges of "actual malice" and fraud. In fact, the Complaint and Schulz's response brief leave the Court to assume that her singular references to malice and the wrongful discharge statute are inadvertent, as neither is mentioned anywhere else in her pleading or subsequent filings. Accordingly, and as the parties do, the Court directs its focus to Schulz's charge of actual fraud, as defined by Montana Code Annotated § 28–2–405(4) and (5).

Actual fraud, like constructive fraud, attacks the validity of the consent required to form a contract. *See* Mont. Code Ann. § 28–2–405. A party to a contract commits actual fraud by, *inter alia*, making "a promise . . . without any intention of performing it" or by committing "any other act fitted to deceive." *Id.* at 28–2–405(4), (5). Still, "the mere making of a promise which the promisor fails to keep is not actionable fraud." *Avco Fin. Servs. v. Foreman-Donovan*, 772 P.2d 862, 864 (Mont. 1989) (citing *Gallatin Trust and Savings Bank v. Henke*, 461 P.2d 448, 450 (overruled on other grounds)). A prima facie actual fraud claim requires the plaintiff to establish nine elements:

> (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation.

*In re Estate of Kindsfather*, 108 P.3d 487, 490 (Mont. 2005) (citations omitted).

As she did in her constructive fraud claim, Schulz supports her actual fraud claim by alleging that Defendants "owed a duty to disclose to [her] all material facts relating to the conditions of her contractual employment including that she would be treated as an employee and not an independent [a]gent." (*Id.* at 16.) Again, she goes on to say that Defendants "created false impressions . . . relating to their refusal to uphold their contracts as written." (*Id.*) In response to Defendants' motion to dismiss, Schulz explains that she sufficiently pleaded actual fraud because "[t]he contract[s] indicated Defendants would not control how [she] would operate her business. However, at the same time they had Agent Managers . . . supervise[,] monitor[,] and control how [she] was performing [her] job." (Doc. 13 at 17.)

True as these allegations are taken, Schulz fails to state with particularity that Defendants did anything more than breach contractual promises—breaches that do not rise to the level of fraud. *See Avco Fin. Servs.*, 772 P.2d at 864. While the Court recognizes that "conditions of mind" like knowledge "may be alleged generally," Fed. R. Civ. P. 9(b), Schulz does not even generally allege facts to indicate that Defendants knew at the time of contracting that they had no intention of adhering to the contracts' terms. She retroactively inserts the words "who," "what," "when," "where," and "how" into the language of the Complaint to argue

that she complied with Rule 9(b)'s particularity requirement, but the Court remains unconvinced. (Doc. 13 at 15–16.)

As already discussed in relation to constructive fraud, Defendants' alleged conduct in contravention of the contracts' terms twelve years after formation fails to demonstrate anything other than breach. Indeed, Schulz argues that Defendants had an incentive to breach their agency agreements based on her growing business relationships and hefty earnings under the contracts. (Doc. 13 at 16.) Be that as it may, whether Defendants breached the contracts—or had incentive to do so—is irrelevant to the question of whether they defrauded her into contracting in the first place. To that question, Schulz's Complaint and response lack any answer.

So, without factual allegations to support any inference beyond breach of contract, the Court agrees with Defendants that dismissal of Count VII pursuant to Rule 9(b) is proper.

## III. Amendment

Schulz asks the Court to grant her leave to amend the Complaint should it determine that dismissal of Counts III, VI, and VII is appropriate. While the Court recognizes that it should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), it agrees with Defendants that, in this case, amendment would be futile. *See Rutman Wine Co.*, 829 F.2d at 738.

Nothing in the Complaint nor in Schulz's response brief indicates that she could remedy the deficiencies in Counts III, VI, and VII. Schulz baldly states that she "should be able to amend the [C]omplaint if the [C]ourt finds for Defendants." (Doc. 13 at 18.) As Defendants point out, she does not represent that she can provide additional facts that would fill the legal holes identified in her Complaint. Indeed, her response brief demonstrates that, on these three Counts, she will be unable to manipulate either law or fact to bring them to up to muster under Federal Rules of Civil Procedure 8 and 9.

Therefore, because the Court finds that amendment would be futile, it denies Schulz's bare request for leave to amend.

## ORDER

For the foregoing reasons, IT IS ORDERED that the motion (Doc. 2) is GRANTED. Accordingly, IT IS ORDERED that Counts III, VI, and VII are DISMISSED.

DATED this 20th day of July, 2020.

_____
Dana L. Christensen, District Judge
United States District Court